# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

―――――――――

Nº 09-CV-3724 (JFB)

―――――――――

IN RE: MITCHELL J. COHEN,

Debtor.

MITCHELL J. COHEN, LEND AMERICA, INC., WELLS FARGO BANK, N.A., SAXON MORTGAGE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for LEND AMERICA, INC., AMERICA'S SERVICING COMPANY, RICHARD L. STERN, as Chapter 7 Trustee,

Appellants,

VERSUS

TREUHOLD CAPITAL GROUP, LLC,

Appellee.

―――――――――

**MEMORANDUM AND ORDER**
January 6, 2010

―――――――――

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Mitchell J. Cohen (hereinafter "Cohen" or "Debtor") pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). The appeal arises out of the action of Appellee Treuhold Capital Group, LLC (hereinafter "Treuhold" or "Appellee") to avoid the transfer of property by Cohen, allegedly on behalf of Treuhold, to himself.

Appellant Cohen and mortgagee Lend America and its assignees, Wells Fargo Bank ("Wells Fargo") and Saxon Mortgage Services, Inc. ("Saxon") (collectively, "Appellants") appeal from the June 29, 2009 Memorandum Decision and Order of the Honorable Dorothy Eisenberg, United States Bankruptcy Judge, granting Appellee's motion for summary judgment and denying Appellants' joint motion for summary judgment. The Bankruptcy Court held that Treuhold was entitled to recover the Brookhaven Property and the Coursen Property (collectively, the "Properties"), which were the subject of the challenged transfers, free and

clear of all existing liens, and further held that the secured claims of Wells Fargo and Saxon with respect to their mortgage liens against those Properties should be reclassified as unsecured claims against the Debtor's bankruptcy estate. *Treuhold Cap. Group LLC v. Cohen* (*In re Cohen*), No. 08-8058-478, 2009 WL 1871054, at *17 (Bankr. E.D.N.Y. June 29, 2009).

Appellants bring their appeal on the following grounds: (1) the Bankruptcy Court erred in holding, as a matter of law, that the relationship between Treuhold and Metropolitan Housing LLC (hereinafter "Metropolitan"), a limited liability corporation founded by the Debtor and his former partner, Steve Wissak (hereinafter "Wissak"), was not a joint venture; (2) the Bankruptcy Court erred in holding, as a matter of law, that neither Metropolitan nor Cohen had actual and/or apparent authority, as the agent of Treuhold, to effectuate the transfer of the Brookhaven Property and the Coursen Property to Cohen; (3) the Bankruptcy Court erred in holding, as a matter of law, that the Settlement and Forbearance Agreement was an "executory accord," rather than a novation; (4) the Bankruptcy Court erred in awarding Treuhold titles of the Brookhaven and Coursen Properties free and clear of the mortgage liens of Wells Fargo and Saxon; (5) the Bankruptcy Court erred in determining that Cohen was liable for the entire debt owed to Treuhold as a joint and several obligor; (6) the Bankruptcy Court erred in failing to consider alleged payments in the sum of $976,705.00 that already had been received by Treuhold, reducing the individual obligation of Cohen at the time of filing to $302,281.00; (7) the Bankruptcy Court erred in holding that Treuhold did not ratify the challenged transfers or waive its right to object to the transfers; and (8) the Bankruptcy Court erred in dismissing Appellants' affirmative defenses of unclean hands, equitable estoppel, and laches.

As set forth below, this Court concludes that the Bankruptcy Court correctly determined, based upon the undisputed facts, that the transfers of the Brookhaven Property and the Coursen Property by Cohen were fraudulent, and properly set aside the transfers on summary judgment. However, this Court concludes that disputed issues of material fact exist with respect to the existence of a joint venture and Treuhold's proper recovery and, therefore, the Bankruptcy Court erred in granting summary judgment on those issues. Accordingly, the Court remands the case to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

## I. BACKGROUND

The following facts are derived from the parties' briefs and the bankruptcy record on appeal. Unless otherwise noted, the facts are undisputed.

### A. The Business Agreement Between Treuhold and Metropolitan

Alan Sarter is the sole principal and member of Treuhold. Cohen and Wissak were the principals and members of Metropolitan. (Appellants' Joint Brief (hereinafter "Joint Brief") at 4; Appellee's Opposition Brief (hereinafter "Opp. Brief") at 3.) In December 2001, Treuhold and Metropolitan entered into a business arrangement, the terms of which are not memorialized in a written agreement. (Joint Brief at 4.) Under the agreement, Metropolitan and Treuhold would purchase, refurbish, and sell homes and property in New York State. (*Id.* at 5.)

For each property, Metropolitan would first locate real estate for purchase. (*Id.*) Once

Metropolitan located potential real estate, it would then approach Treuhold about purchasing the property. *In re Cohen*, 2009 WL 1871054, at *1. If Treuhold expressed interest in purchasing the property, Treuhold would provide the financing for the purchase of the property, and title to the property would be held in Treuhold's name. (Joint Brief at 5; Opp. Brief at 4.) Treuhold would purchase the property using its own funds and, if necessary, would obtain money for the purchase from a line of credit from Medallion Business Credit LLC ("Medallion"). (Joint Brief at 6.) Medallion required Treuhold "(1) to furnish a copy of the deed to the properties in [Treuhold's] name before Medallion would fund its loans and (2) to pledge the properties to Medallion upon closing." 2009 WL 1981054, at *1. Collateral for the line of credit was in the form of the properties. Treuhold would acquire these properties free and clear of all mortgages and liens so that title could be transferred to purchasers without Treuhold having to pay off a mortgage. *Id.* (*See also* Joint Brief at 6.)

Once the property was purchased, Metropolitan would make necessary repairs and improvements on the property. (Joint Brief at 5.) Metropolitan would then find purchasers for the property and assist those prospective buyers in finding financing for the purchase of the property. (*Id.*) According to Treuhold, at that point, Metropolitan would notify Treuhold that it had a buyer for the property. (Opp. Brief at 4.) Cohen disputes that fact and asserts that "Metropolitan, including its employees (including Cohen), was given discretion and authority to prepare the properties for sale, make necessary alterations to the properties, find purchasers, and sell the properties." (Joint Local Rule 7056.1 Statement ¶ 9.) The papers for the sale would typically be executed by employees of Metropolitan, including Cohen. (Joint Brief at

6.) Sarter generally did not attend the closings on behalf of Treuhold. (Joint Brief at 6; Opp. Brief at 5-6.)

Once a property sale had closed, Treuhold would initially receive back the funds it expended to acquire the property, plus interest and the cost of obtaining insurance for the property. (Joint Brief at 5; Opp. Brief at 4.) Metropolitan would receive back the funds it expended to make improvements on the property. (Opp. Brief at 4.) Any profits remaining thereafter would be split between Treuhold and Metropolitan. (*Id.*) The parties executed around 120 purchases, improvements, and sales of property in this manner. (Joint Brief at 5.)

B. The Brookhaven Property

Treuhold acquired the property at 22-25 Brookhaven Ave., Far Rockaway, New York (the "Brookhaven Property") on October 11, 2006 for $405,000. (Joint Brief at 7; Opp. Brief at 10.) On November 7, 2006, a contract of sale was signed, conveying the Brookhaven Property from Treuhold to Cohen for $550,000. (Opp. Brief at 10.) On November 9, 2006, title to the property was conveyed from Treuhold to Cohen. (Pl.'s Motion Ex. 13 at 2.[1]) Cohen signed Sarter's name (in Sarter's capacity as a member of Treuhold) to these papers; Sarter claims that he did not authorize Cohen to do so, and that he was not aware of these transactions. (Opp. Brief at 10-11.) The notary public who acknowledged the signatures at the closing was Ceil Calisto, Cohen's sister. (*Id.*)

---

[1] References to "Pl's Motion" refer to Plaintiff's Motion for Summary Judgment filed by Treuhold in *Treuhold Capital Group LLC v. Cohen*, No. 08-08058 (DTE), 2009 WL 1871054, at *17 (Bankr. E.D.N.Y. June 29, 2009).

At the time of the conveyance, Cohen obtained two mortgages from Lend America, valued at $341,250.00 and $131,250 respectively, for which Lend America received a security interest in the property. (Pl.'s Motion Exs. 15, 16.) Cohen presented to Lend America a letter, allegedly signed by Sarter, indicating that $30,000 in renovations had been made on the property since its purchase. (Pl.'s Motion Ex. 17.) These mortgages were thereafter assigned to Wells Fargo and Saxon, respectively.[2] (Joint Brief at 7.)

## C. The Coursen Property

On August 25, 2006, Treuhold acquired the property located at 39 Coursen Place, Staten Island, New York (the "Coursen Property") for approximately $265,000. (Opp. Brief at 12.) On November 14, 2006, a contract of sale was signed, selling the property from Treuhold to Cohen. (Pl.'s Motion Ex. 19.) Title to the Coursen Property was conveyed to Cohen on November 17, 2006. (Id. Ex. 20.) Again, Sarter's name (in his capacity as member of Treuhold) was signed to these documents by Cohen; Sarter alleges that this occurred without his authorization or knowledge of the transaction. (Opp. Brief at 13-14.)

At the time of the conveyance, Cohen borrowed $405,000 from Lend America, secured by two mortgages for $337,500 and $67,500. (Id. Exs. 21, 22.) Cohen submitted to Lend America a letter, allegedly signed by Sarter, that indicated that Cohen had made $61,000 in improvements to this property. (Id. Ex. 23.) These were assigned to Wells Fargo and Saxon, respectively.[3] (Joint Brief at 8.)

## D. January 2007 Letter Agreement

In November 2006, Sarter discovered that several parcels of property were held in the names of third parties, and that the Brookhaven Property and the Coursen Property were held in Cohen's name. (Opp. Brief at 8.) Sarter approached Cohen regarding this, and Cohen acknowledged that Treuhold was owed money as a result of various property transfers that Cohen had executed, but for which Treuhold had not been paid. (Id.)

As a result, the parties entered into the January 2007 Letter Agreement. The letter agreement stated that Metropolitan, Cohen, and Wissak were indebted to Treuhold in the amount of $3,104,086. (Pl.'s Motion Ex. 10.) Under the terms of the agreement, the three would wire-transfer to Treuhold's account at least $1 million by January 19, 2007 and pay the remainder of the balance on or before February 15, 2007. (Id.) Upon payment in full, Treuhold, Sarter, Metropolitan, Wissak, and Cohen would exchange general releases and a confidentiality agreement would enter into force. (Id.) Cohen, Wissak, and Metropolitan paid the $1 million due by January 19 but did not pay the remainder due by February 15. Cohen and Wissak asked Sarter for more time to repay the debt.

## E. April 2007 Settlement Agreement

---

[2] Although Appellants contend that $294,000 of these proceeds was paid to Treuhold, the Bankruptcy Court concluded, based upon the uncontroverted evidence in the record, that the $294,000 paid to Treuhold at that time was related to the sale of a different property. *In re Cohen*, 2009 WL 1871054, at *3.

[3] Appellants assert that Cohen paid Treuhold $164,000 of these proceeds, but the Bankruptcy Court found that there was no evidence in the record that indicates that the check for this amount was ever negotiated. *In re Cohen*, 2009 WL 1871054, at *3.

As a result of Cohen's and Wissak's request for an extended period of time to repay the funds owed to Treuhold, the parties entered into the Settlement and Forbearance Agreement of April 2007 (hereinafter "April 2007 Agreement," "April 2007 Settlement Agreement" or "Agreement"). This April 2007 Agreement acknowledged that Metropolitan, Cohen, and Wissak were indebted to Treuhold in the amount of $1,935,986.02. (Pl.'s Motion Ex. 11 ¶ 2.) The April 2007 Agreement further provided a timeline detailing on which dates payments would be due, and by whom each payment was to be made. The payments were subject to 12% per annum interest and a 24% per annum interest default rate.

At the time of the signing, the parties acknowledged that Metropolitan, Cohen, and Wissak had already paid $622,705 toward the debt. Additional payments to Treuhold were to be made as follows:

- Wissak was to pay $657,000, plus interest, within six months of the Agreement. (*Id.* ¶ 3(b).)
- Wissak and Cohen, jointly and severally, were to pay $200,000, plus interest in two installments, due by June 30, 2007. (*Id.* ¶ 3©.)
- Cohen was to pay $457,000 in monthly installments due on the first of each month, with payment to be completed by July 1, 2008. (*Id.* ¶ 3(d).)

At the time of execution of the April 2007 Agreement, Wissak was also to deliver to Treuhold a mortgage on his property at 130 Wendover Road, Rye, New York, in the amount of $857,000, plus interest at 12% per annum, and a deed on that property conveying that property to Sarter as Treuhold's nominee. (*Id.* ¶ 6(b).) Treuhold's mortgage would be junior to a prior-existing mortgage on the property for $2,170,000, but would be senior to another mortgage on the property for $900,000.

(*Id.*) Cohen was also to deliver to Treuhold an assignment of a life insurance policy insuring the life of Cohen for $600,000. (*Id.* ¶ 6©.) Upon execution of the April 2007 Agreement, Metropolitan, Cohen, and Wissak also agreed to pay to Treuhold's counsel the attorney's fees incurred by Treuhold relating to the April 2007 Agreement. (*Id.* ¶ 14.) Finally, attached to the April 2007 Agreement was a schedule providing an accounting for nine parcels of property and how the parties arrived at the $1,935,986.02 amount due to Treuhold. (*Id.* Sched. A.)

Provided that there were no defaults, Treuhold agreed to forbear from commencing any action or litigation seeking to recover any portion of the debt owed by the three parties under the April 2007 Agreement, and upon full payment, Treuhold would deliver to each party a general release form and return to that party his or its original promissory note. (*Id.* ¶¶ 11, 16.) In the event of a default, all sums due and owing from each of the three parties would become due immediately, and Treuhold's forbearance would terminate, allowing Treuhold to either foreclose the Wissak Mortgage or release the Wissak Deed from escrow or to commence "any and all litigation it shall deem appropriate against each of Metropolitan, Cohen, Wissak, and others." (*Id.* ¶ 9.) Upon default, Metropolitan, Cohen, and Wissak would also be responsible for paying any of Treuhold's costs and expenses and expenses relating to the default, including Treuhold's attorney's fees and expenses. (*Id.* ¶ 15.)

The April 2007 Agreement also provided that "[a]ll prior understandings and agreements between the parties herein whether oral or written (including, but not limited to, that certain letter agreement dated January 12, 2007 among Metropolitan, Cohen and Wissak), are superseded by this Agreement, which fully and completely expresses the agreement between

the parties hereto with respect to the subject matter hereof." (*Id.* ¶ 20.)

## F. Default

The Bankruptcy Court concluded that Cohen and Wissak paid approximately $976,175 of the $1,935,986.02 due under the April 2007 Agreement before defaulting. *In re Cohen*, 2009 WL 1871054, at *5. As a result of their failure to pay the full amount due under the Agreement, Treuhold commenced an action against Wissak and Metropolitan in New York State Supreme Court. Treuhold obtained a judgment of $761,522 against Wissak and Metropolitan, but, to date, has not received payment for that judgment. (Opp. Brief at 10.) To date, Treuhold has not recorded the deed to the Wissak property. (*Id.*)

## G. Procedural History

Debtor Cohen filed for Chapter 7 relief on January 21, 2008. Appellee commenced this adversary proceeding against Appellant Cohen and the Appellant mortgagees in order to have title to the Brookhaven Property and the Coursen Property returned to Appellee. Appellee filed a motion for summary judgment on February 17, 2009, and the Appellants filed a joint motion for summary judgment on February 18, 2009.

In its June 29, 2009 Memorandum Decision and Order, the Bankruptcy Court granted Treuhold's motion for summary judgment and denied Appellants' joint motion for summary judgment. In particular, the Bankruptcy Court determined the following on summary judgment: (1) Treuhold and Metropolitan were not engaged in a joint venture; (2) the Debtor, Cohen, did not have authority to sign Sarter's name to the deeds to the Brookhaven and Coursen Properties; (3) the Debtor's signing of Sarter's name on the deeds constituted a forgery; and (4) the forged deeds were void *ab*

*initio* along with the mortgage liens against the Properties; (5) the affirmative defenses asserted by the Appellees failed as a matter of law; and (6) the Brookhaven Property and Coursen Property were not property of the Debtor's estate. *In re Cohen*, 2009 WL 1871054, at *3. Thus, the Bankruptcy Court awarded fee title to the Brookhaven Property and the Coursen Property to Treuhold and vacated the deeds and encumbrances of record on the Properties, including the Saxon mortgages and the Wells Fargo mortgages. *See id.*

## H. The Instant Appeal

On August 26, 2009, Appellants filed an appeal before this Court with respect to the June 29 Memorandum Decision and Order granting Appellee's motion for summary judgment. Appellants filed their brief on October 2, 2009. On October 19, 2009, Appellee filed its opposition papers. On October 29, 2009, Appellants filed their reply. Oral argument was held on November 12, 2009. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

### A. Standard on Bankruptcy Appeal

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *See* Fed. R. Bank. P. 8013. The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir. 2007); *see also Lubow Mach. Co. v. Bayshore Wire Prods.* (*In re Bayshore Wire Prods.*), 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its

conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); *accord Shugrue v. Airline Pilots Ass'n, Int'l* (*In re Ionosphere Clubs*), 922 F.2d 984, 988-89 (2d Cir. 1990). "The question of a debtor's knowledge and intent under §727(a)(4) is a matter of fact . . . ." *Cepelak v. Sears* (*In re Sears*), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (internal citations omitted); *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001).

### B. Summary Judgment Standard

This Court reviews the Bankruptcy Court's order of summary judgment *de novo*. *See Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 7 (S.D.N.Y. 2007) (citing *Adelphia Business Solutions, Inc. v. Abnos*, 482 F.3d 602, 607 (2d Cir. 2007)). The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56©, a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (stating that summary

judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

### III. DISCUSSION

### A. Metropolitan and Cohen as Agents for Treuhold

#### 1. Actual Authority

Appellants argue that Metropolitan or Cohen had authority to execute documents effectuating real property transfers on behalf of Treuhold. The Bankruptcy Court concluded, based upon the undisputed evidence in the record, that Metropolitan and Cohen had neither actual authority nor apparent authority to engage in the challenged transactions without Treuhold's authorization. *In re Cohen*, 2009 WL 1871054, at **8-11. This Court agrees. Specifically, as discussed below, it is undisputed that there was no writing authorizing Cohen to sell the Properties. Thus, because New York law requires such a writing in connection with an agency for the sale of land, Cohen did not have actual authority to sign Sarter's name as a matter of law to sell the Properties. The Bankruptcy Court also correctly determined, in the alternative, that the transactions involving the Properties must be set aside in any event because the self-dealing transactions constituted breaches of fiduciary duty with respect to any agency (or joint venture) that existed.

### a. Lack of the Requisite Written Authorization for Agency Involving Sale of Land

The authority of an agent who signs a contract for the sale of land must be authorized in writing. N.Y. Gen. Oblig. Law § 5-703(2) (a contract for the sale of real property may be signed "by his lawful agent, thereunto authorized by writing"); *Urgo v. Patel*, 746 N.Y.S.2d 733, 735 (App. Div. 2002) (holding that, when neither party had written authorization to enter into an agreement for the sale of land, "the letter of intent [did] not satisfy the statute of frauds"). This applies whether the alleged basis for the agent's authority is actual or apparent. *See Diocese of Buffalo v. McCarthy*, 458 N.Y.S.2d 764, 767-68 (App. Div. 1983) ("However, even assuming that he was acting under applied or apparent authority, the lease would nonetheless be void under the Statute of Frauds. Section 5-703, subd. 2 of the General Obligations Law requires that when a lease for a period greater than one year [or for the sale, of any real property,] is subscribed by a lawful agent on behalf of his principal, the agent's authorization to enter into the agreement must be in writing.").

A writing authorizing Cohen to effectuate the sale of the Brookhaven and Coursen Properties would be necessary whether Metropolitan was engaged in a joint venture with Treuhold or whether Cohen or Metropolitan was merely acting as a general agent for Treuhold. Under New York law, the legal consequences of a joint venture are equivalent to those of a partnership. Similar to partners in a partnership, parties to a joint venture act as principals and as agents for each other. *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004). "Each partner acts, as to himself, as principal, having joint interest in partnership property and, as to each other partner, as

general agent. Even if the subject parcel of real property is allegedly partnership property . . . the [sale] is void in the absence of any evidentiary proof, as here, that [one partner], as agent for his copartners, had written authorization to enter into a contract for the sale of partnership real estate." *Frank v. Katz*, 536 N.Y.S.2d 135, 137 (App. Div. 1988); *see Lee v. ADJMI 936 Realty Assocs.*, 847 N.Y.S.2d 234, 236 (App. Div. 2007) (property co-owner was not authorized to execute contract to sell property on behalf of other co-owner absent writing authorizing co-owner to act as agent); *Chan v. Bay Ridge Park Hill Realty Co.*, 623 N.Y.S.2d 896, 897 (App. Div. 1995) (finding that an agreement for the sale of property signed by only one of two joint owners of the property was void under the Statute of Frauds as to the non-signing co-owner because there was no proof that the signing co-owner was authorized in writing to act on behalf of the non-signing co-owner).

The Bankruptcy Court correctly determined that the undisputed evidence in the record warranted summary judgment in Treuhold's favor on this issue. First, there was no evidence in the record of any writing reflecting that Treuhold or Sarter granted Cohen or Metropolitan power of attorney to sign transfer documents with Sarter's name on Treuhold's behalf. Second, as noted by the Bankruptcy Court, Appellants presented no evidence to the Bankruptcy Court that Sarter provided proof to the title companies that Cohen was an authorized member or agent of Treuhold. *In re Cohen*, 2009 WL 1871054, at *8. On appeal, Appellants do not assert that any such writing exists. Moreover, there is no evidence in the record that Appellee had knowledge of the sale of the Brookhaven and Coursen Properties, let alone authorized such sale, orally or in writing. *Id.* at *9. Accordingly, given that it is undisputed that there is no written authorization regarding the purported agency in connection with the sale of land (as required

under New York law), Cohen did not have actual authority to sign Sarter's name on behalf of Treuhold to sell the Brookhaven and Coursen Properties to himself. Appellants have failed to present evidence to raise a genuine issue of material fact as to such actual authority and, thus, the Bankruptcy Court correctly granted summary judgment in Treuhold's favor on that issue.

### b. Breach of Fiduciary Duty with Respect to Any Purported Agency Regarding Sale of Land

The Bankruptcy Court correctly determined, in the alternative, that the challenged transactions involving the Properties must be set aside because the undisputed evidence demonstrated that the transactions themselves were breaches of the fiduciary duty of loyalty owed by Cohen and Metropolitan to Treuhold, as either joint venturers or as agents.

It is well-settled that "[j]oint adventurers . . . owe to one another . . . the duty of the finest loyalty." *DIRECTV Group, Inc. v. Darlene Invs., LLC*, No. 05 Civ. 5819 (WHP), 2006 WL 2773024, at *5 (S.D.N.Y. Sept. 27, 2006) (quoting *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928)); *see, e.g.*, *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 442-43 (S.D.N.Y. 2006); *Gramercy Equities Corp. v. Dumont*, 531 N.E.2d 629, 633 (N.Y. 1988). Such a relationship "gives rise to a fiduciary duty on [the defendant fiduciary's] part to preserve and protect plaintiff's interest." *Gross v. Vogel*, 437 N.Y.S.2d 431, 433 (App. Div. 1981); *see Shore Parkway Assoc. v. United Artists Theater Circuit, Inc.*, No. 92 Civ. 8252 (JFK), 1993 WL 361646, at *4 (S.D.N.Y. Sept. 14, 1993) (finding that the complaint properly stated a claim for breach of fiduciary duty based on the plaintiff's claim that the defendant breached a joint venture agreement); *Ebker v. Tan Jay Int'l, Ltd.*, 741 F. Supp. 448, 468 (S.D.N.Y. 1990); *see also*

*Birnbaum v. Birnbaum*, 539 N.E.2d 574, 576 (N.Y. 1989) ("This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." (citation omitted)). "[C]o-venturers may not engage in self-dealing, and are otherwise under an affirmative duty to communicate business opportunities to one another. *Madison Hudson Assocs., LLC v. Neumann*, 806 N.Y.S.2d 445, 445 (Sup. Ct. 2005) (citing *Birnbaum*, 539 N.E.2d at 576). Joint venturers who engage in self-dealing will be held accountable for the secret profit made. *R.C. Gluck & Co. v. Tankel*, 211 N.Y.S.2d 602, 605 (App. Div. 1961).

Agents owe their principals a similar fiduciary duty. Under New York law, "agency is defined as 'a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 460 (E.D.N.Y. 2007) (quoting *L. Smirlock Realty Corp. v. Title Guar. Co.*, 421 N.Y.S.2d 232, 238 (App. Div. 1979)). An agent is a fiduciary with respect to the matters within the scope of the agency; the agent is thereby bound to exercise the utmost good faith, loyalty, and honesty toward its principal. *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1331-32 (2d Cir. 1996); *Sokoloff v. Harriman Estates Devel. Corp.*, 754 N.E.2d 184, 188-89 (2001); *see also Sim v. Edenborn*, 242 U.S. 131, 134-36 (1916). If an agent receives anything as a result of his violation of his duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal. *Sokoloff*, 754 N.E.2d at 189.

In the instant case, it is undisputed that, prior to the April 2007 Agreement between the

parties, Treuhold was not compensated for the sale of the Brookhaven or Coursen Properties. As the Bankruptcy Court noted, "When [Cohen] engaged in the transfer of the Properties, [he] was not acting for the benefit of [Treuhold] but for himself and Metropolitan. [Cohen] cannot wrongfully transfer the Properties for his own benefit or the benefit of a third party by cloaking these transfers with actual authorization [Treuhold] gave him with respect to the transfer of other properties." *In re Cohen*, 2009 WL 1871054, at \*9. Whether as a joint adventurer or an agent, Cohen and Metropolitan owed Appellee a fiduciary duty not to engage in self-dealing. Because Cohen's sales of the Brookhaven and Coursen Properties were effectuated for his own benefit—not for Treuhold's benefit—the transfers must be set aside, and Cohen must account for the profits from such unauthorized transfers. In short, with respect to the sale of the Brookhaven and Coursen Properties, the Bankruptcy Court properly concluded, in the alternative, that these transactions were instances of self-dealing, and thereby breaches of Metropolitan's and Cohen's duty of good faith as agents (or fellow joint venturers) for Treuhold, which required that those transfers be set aside.

## 2. Apparent Authority as to the Mortgagees

Appellants next contend that, even if Cohen and Metropolitan lacked actual authority to effectuate these transactions, the Properties should not be returned to Appellee free and clear of all liens (or returned to Appellee at all) because the Appellant mortgagees justifiably believed that Cohen had apparent authority to carry out the sales of Brookhaven Property and Coursen Property. The Bankruptcy Court determined, on summary judgment, that the mortgagees could not have reasonably believed that Cohen was acting within the scope of his authority as an agent. This Court agrees. As discussed below, Appellants have presented absolutely no

evidence to support a belief that Cohen had the authority to forge Sarter's name on the sale documents in a transaction where the land was being sold to Cohen himself. Given the undisputed evidence, no rational trier of fact could conclude that apparent authority existed, and Appellants have failed to raise a genuine issue of material fact as it relates to any such authority.

Third parties dealing with an agent act at their own peril. *Edinburg Volunteer Fire Co. v. Danko Emergency Equip. Co.*, 867 N.Y.S.2d 547, 550 (App. Div. 2008); *see also Porges v. United States Mortgage & Trust Co.*, 96 N.E. 424, 425-26 (1911). "[O]ne dealing with an agent and knowing that the agent is authorized to act under a power of attorney is bound to ascertain the character and extent of that power." N.Y. Jur. Agency § 97 (citing *Craighead v. Peterson*, 72 N.Y. 279, 279 (1878)). An agent himself cannot create apparent authority. *Prop. Advisory Group, Inc. v. Bevona*, 718 F. Supp. 209, 211 (S.D.N.Y. 1989). Although it is possible for apparent authority to arise absent direct contact between the principal and the third party, *id.*, "'[e]ssential to the creation of apparent authority are words or conduct of the principal, *communicated to a third party*, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.'" *Consumers Subscription Ctr., Inc. v. Web Letter Co.*, 609 F. Supp. 1134, 1139 (E.D.N.Y. 1985) (quoting *Hallock v. State*, 474 N.E.2d 1178, 1181 (N.Y. 1984)) (emphasis added). For example, the "appointment of a person to a position with generally recognized duties may create apparent authority." *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda*, 877 F.2d 189, 193 (2d Cir. 1989) (citing Restatement (Second) of Agency §§ 27 cmt. a, 49 cmt. c (1958)). To determine the extent of apparent authority, "a court must look to the accompanying circumstances, including the situation of the parties, their relationship to

each other and the business in which they are engaged, the general usages of the business in question and the purported principal's business methods." *Prop. Advisory* Group, 718 F. Supp. at 212 (citing *Columbia Broad. Sys. Inc. v. Stokely-Van Camp Inc.*, 522 F.2d 369, 375-76 (2d Cir. 1975)).

Where a party asserts the doctrine of apparent authority to justify its reliance on the actions of an agent, that party must conduct a reasonable inquiry into circumstances surrounding the action. *Collision Plan Unlimited, Inc. v. Bankers Trust Co.*, 472 N.E.2d 28, 29 (N.Y. 1984). When relying on an agent's apparent authority, a third party's duty of inquiry arises when "(1) the facts and circumstances are such as to put the third party on inquiry, (2) the transaction is extraordinary, or (3) the novelty of the transaction alerts the third party to a danger of fraud." *FDIC v. Providence Coll.*, 115 F.3d 136, 141 (2d Cir. 1997).

Appellants offer no support for their assertion that the Appellant mortgagees were justified in believing that Cohen had authority to sign Sarter's name. Appellants point to no interactions between Appellant mortgagees and Sarter or Treuhold. They also do not reference any representations of Sarter or Treuhold regarding the scope of Cohen's or Metropolitan's authority that were communicated to them by Cohen. Appellants have not cited any cases where it was justifiable for a third party to rely on the apparent authority of an agent who lacked an authorized writing in order to transfer real property. Indeed, as noted *supra*, even when an agent is acting under apparent authority, a writing authorizing that agent to transfer the principal's land is still required. *See Diocese of Buffalo*, 458 N.Y.S.2d at 767-68. Although Appellants argue that Treuhold had authorized Metropolitan and its employees to execute deeds and related conveyance documents on behalf of the alleged joint venture in more than

120 transactions over the course of five years, Appellants crucially fail to assert that the Appellant mortgagees were party to, or even aware of, any of those transactions prior to the transfer of the Brookhaven and Coursen Properties—particularly any transactions whereby Cohen signed Sarter's name for Treuhold in order to convey property to Cohen individually. Nor do Appellants provide any evidence that such practices were industry custom.

Moreover, the record does not demonstrate that the Appellant mortgagees made any inquiry whatsoever into the scope of Cohen's authority. As the Bankruptcy Court noted, "[t]here is no evidence that the mortgagees ever undertook to determine the extent of [Cohen's] authority to sign Sarter's name on behalf of Treuhold for any of the sales transactions that occurred." *In re Cohen*, 2009 WL 1871054, at *11. The self-dealing nature of this transaction should have been sufficient to put the Appellant mortgagees on notice that this action was outside the scope of Cohen's authority as agent for Treuhold. Similarly, Cohen signed Sarter's name on the sale documents—not his own name as Sarter's agent—in a transaction where the land was being sold to Cohen himself.[4] Accordingly,

---

[4] Appellants cite *Youngs v. Perry*, 59 N.Y.S. 19, 20-21 (App. Div. 1899), for the proposition that the agent signing an instrument on behalf of a principal need not indicate that the instrument is being signed as an authorized signatory. *Youngs*, however, addressed a situation where the agent signed on behalf of a corporation, where "it follows of necessity that the written indorsement could not have been its personal act, but must have been done by an agent." *Id.* at 20. The proper issue as to whether the Appellant mortgagees justifiably relied on the apparent authority of Cohen to sign on behalf of Treuhold revolves around the reliability of the circumstances of the transaction. The agent in *Youngs* was not a signatory to a self-dealing transaction. Furthermore, neither *Youngs* nor any of the other cases cited by Appellants deal with a

given this undisputed evidence, no rational trier of fact could find that the Appellant mortgagees were justified in believing that Cohen had apparent authority to engage in the Brookhaven and Coursen Property sales on behalf of Treuhold. Accordingly, the Bankruptcy Court correctly determined that Treuhold was entitled to summary judgment on this issue.

### 3. Ratification

Appellants next argue that, even if Cohen lacked proper authorization to convey the Brookhaven and Coursen Properties, Treuhold's subsequent actions—entering into two settlement agreements with Cohen, Wissak, and Metropolitan—ratified the sales of the Properties, thereby relinquishing any claim that Treuhold has to possession of the Properties. The Bankruptcy Court concluded on summary judgment that there was no ratification by Treuhold because the undisputed evidence demonstrates that Treuhold did not agree to release Cohen from any liability until the April 2007 Settlement Agreement had been satisfied. *In re Cohen*, 2009 WL 1871054, at *13. This Court agrees. In particular, as discussed below, it is undisputed that not all of the terms of the April 2007 Settlement Agreement were satisfied and Treuhold's right to bring a claim was not extinguished unless that occurred. Thus, as a matter of law, the April 2007 Settlement Agreement was not a ratification of the sales of the Properties.

Ratification occurs when an agent acts outside the scope of his or her authority, but the agent's acts are later expressly or impliedly adopted by the principal and therefore attributable to the principal. *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 453 n.6 (S.D.N.Y. 2007) (applying New York law). Ratification will be held to have authorized an agent's actions "if the principal adopts the unauthorized act of his agent in order to retain a benefit for himself." *Munroe v. Harriman*, 85 F.2d 493, 495 (2d Cir. 1936). "Ratification also may be found to exist by implication from a principal's failure to dissent within a reasonable time after learning what had been done." *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 375 (2d Cir. 1994); *see also In re S. African Apartheid Litig.*, 633 F. Supp. 2d 117, 122 (S.D.N.Y. 2009). If a property transfer that was effectuated without authorization is subsequently ratified, the absence of a signed writing authorizing a principal's agent to transfer the real property on that party's behalf will not invalidate the transfer: "An unauthorized execution of an instrument affecting the title to land or an interest therein may be ratified by the owner of the land or interest so as to be binding upon him." *Diocese of Buffalo*, 458 N.Y.S.2d at 768 (citing 21 N.Y. Jur. Estoppel, Ratification, and Waiver § 87; *Holm v. C.M.P. Sheet Metal*, 455 N.Y.S.2d 429, 432 (App. Div. 1982)); *30 Carmine LLC v. Depierro*, 791 N.Y.S.2d 383, 392 (Civ. Ct. 2005).

The Bankruptcy Court correctly determined on summary judgment that Treuhold could not have ratified the transfer of the Brookhaven or Coursen Properties because the uncontroverted evidence in the record demonstrates that Cohen withheld information about the transfers, the closing statements for the sale of the Properties, and the proceeds of the sale from Appellee, *see In re Cohen*, 2009 WL 1871054, at *13, and Treuhold did not agree to release any claims against Cohen until the April 2007

situation in which the agent was a signatory to deeds or other real property conveyance documents, in which case New York requires that the agent be authorized in writing. *See* N.Y. Gen. Oblig. Law § 5-703(2). These crucial factual differences should have been sufficient to put the third party Appellant mortgagees on inquiry as to the existence of a fraud.

Settlement Agreement had been satisfied. *Id.* ("[T]here can be no ratification as [Treuhold] did not agree to release [Cohen] from any liability until the April 2007 Agreement had been satisfied.").

Treuhold did not act to retain the benefit of the sale for itself unless and until Cohen or Wissak repaid Appellee in full for the transfer of the Brookhaven and Coursen Properties. *See id.* Because, as discussed *infra*, the April 2007 Settlement Agreement was an executory accord, rather than a novation, it did not extinguish Appellee's right to bring a claim for Cohen's initial wrongful transfer of the property until Cohen, Wissak, and Metropolitan satisfied the terms of the Agreement. Appellants do not contend that Cohen, Wissak, and Metropolitan have satisfied the terms of the April 2007 Agreement. The result of the breach of the Agreement is that Appellee may proceed against Cohen for the original underlying claim: return of the title of the Brookhaven and Coursen Properties. Accordingly, the Bankruptcy Court correctly concluded on summary judgment, based upon the undisputed evidence in the record, that Treuhold did not ratify Cohen's unauthorized transfer of the Brookhaven and Coursen Properties and, therefore, those transfers were unauthorized and void.

### 4. The Conveyances and Mortgages Are Invalid

As discussed above, the Court agrees with the Bankruptcy Court's conclusion that the undisputed evidence demonstrates that Cohen lacked the requisite authority or written authorization to sign the deeds and related conveyance documents and that Cohen's signature on the deeds transferring the Brookhaven and Coursen Properties was a forgery. "A forged deed is void and conveys no title." *Yin Wu v. Wu*, 733 N.Y.S.2d 45, 46 (App. Div. 2001); *see also Republic of Benin v.*

*Mezei*, 483 F. Supp. 2d 312, 316 (S.D.N.Y. 2007). Consequently, any mortgages based on the forged deeds are also invalid. *GMAC Mortgage Corp. v. Chan*, 867 N.Y.S.2d 204, 204-05 (App. Div. 2008) (finding that when one brother forged his other brother's name in order to convey property that they co-owned to himself, the deed, which was based on forgery, was void *ab initio*, and the mortgage based on the deed was invalid); *Cruz v. Cruz*, 832 N.Y.S.2d 217, 218 (App. Div. 2007) ("A deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid."); *Crispino v. Greenpoint Mortgage Corp.*, 758 N.Y.S.2d 367, 369 (App. Div. 2003) ("[T]he Supreme Court correctly set aside the deed and mortgage which were obtained under false pretenses."). Although Appellants attempt to rely on the protections offered to bona fide purchasers under New York Real Property Law § 266, a "person cannot be a bona fide purchaser or encumbrancer for value through a forged deed, as such a deed is void and conveys no title." *Karan v. Hoskins*, 803 N.Y.S.2d 666, 667 (App. Div. 2005).[5] The Bankruptcy Court also correctly determined, as a matter of law, that the assignments of the mortgages held by Wells Fargo and Saxon were invalid because an assignee of a mortgage acquires "no rights greater than those of the assignor." *See Crispino*, 304 A.D.2d at 609, 758 N.Y.S.2d at 369. Accordingly, after *de novo* review of the record, the Court affirms the Bankruptcy Court's conclusion, on summary judgment, that Cohen did not have the actual or apparent authority to sign Sarter's name to the deeds of the Brookhaven and Coursen Properties, that the signing of Sarter's name constituted a forgery, and that the forged

---

[5] Moreover, as discussed *supra*, the protections afforded by N.Y. Real Property Law § 266 would likely be unavailable to the Appellant mortgagees because the circumstances surrounding the self-dealing transaction should have put the mortgagees on notice of the fraud committed by Cohen.

deeds and mortgage liens on the Properties were void *ab initio*.

## B. April 2007 Settlement Agreement

Appellants next argue that the April 2007 Settlement and Forbearance Agreement between the parties constituted a novation, not an executory accord, and that accordingly, Treuhold's only remedy for non-performance of the April 2007 Agreement was to sue on the Agreement. The Bankruptcy Court concluded, as a matter of law, that the April 2007 Agreement was not a novation, but an executory accord. *In re Cohen*, 2009 WL 1871054, at *13. This Court agrees. As set forth below, the undisputed evidence demonstrates that the April 2007 Agreement was an executory accord.

A novation requires (1) a valid previous obligation, (2) an agreement for a new contract, (3) the actual formation of a new contract, and (4) an intention to extinguish the old contract. *See Flaum v. Birnbaum*, 508 N.Y.S.2d 115, 120 (App. Div. 1986). The underlying principle is that "novation requires the consent of all parties to substitute one obligation or agreement for another." *Raymond v. Marks*, 116 F.3d 466, 466 (2d Cir. 1997). Where the original contract has already been breached, there cannot be a novation, because a previously valid obligation did not exist at the time the new contract was made. *Wasserstrom v. Interstate Litho Corp.*, 495 N.Y.S.2d 217, 219 (App. Div. 1985). A party injured by breach of a novation may only seek relief under the substitute agreement. *Nat'l Am. Corp. v. Fed. Republic of Nigeria*, 448 F. Supp. 622, 643 (S.D.N.Y. 1978), *aff'd*, 597 F.2d 314 (2d Cir. 1979).

An executory accord is "an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, [or] contract . . . and a promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, [or] contract . . . ." N.Y. Gen. Oblig. Law § 15-501. Under New York law, an accord is "an agreement by one party to offer and the other to agree to accept in settlement of an existing or matured unpaid claim an amount of money or some performance other than that to which the second party believes it is entitled." *Sudul v. Computer Outsourcing Servs., Inc.*, 917 F. Supp. 1033, 1047 (S.D.N.Y. 1996) (citing *May Dep't Stores Co. v. Int'l Leasing Corp.*, 1 F.3d 138, 140 (2d Cir. 1993)). If the accord is not satisfied, the obligee may sue under the original claim *or* may sue for breach of the accord. *Id.*

It is often difficult to determine whether a new agreement is a novation or an executory accord. *See Stahl Mgmt. Corp. v. Conceptions Unlimited*, 554 F. Supp. 890, 894 (S.D.N.Y. 1983). The difference between the two turns upon whether the parties intended the new agreement to discharge their previously existing obligations. *See Sudul*, 917 F. Supp. at 1047 (citing *May Dep't Stores Co.*, 1 F.3d at 140). Under New York law, when parties agree to a "novation," the existing obligation is extinguished immediately by acceptance of new agreement; however, if parties intend that under the new agreement, the existing claim would be discharged in the future by rendition of substituted performance, the new agreement is an executory accord. *See id.* at 1047-48. "At times, the matter of intention may be discerned as a matter of law from documents exclusively, and, in other situations, a court must look to any extrinsic proof that may exist." *Koenig Iron Works, Inc. v. Sterling Factories, Inc.*, No. 89 Civ. 4257, 1999 WL 178785, at *8 (S.D.N.Y. Mar. 30, 1999) (citing *Mallad Constr. Corp. v. County Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 292-93 (1973)). If the intent of the parties can be found in the unequivocal language of the contract, the court

may grant summary judgment. *Nat'l Am. Corp.*, 448 F.Supp. at 643.

The characterization of the subsequent agreement—as a novation or an executory accord—is determinative of the remedy to which the non-breaching party is entitled. Because a novation has the effect of extinguishing the prior contract between the parties, the existence of a novation "must never be presumed," *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F. Supp. 1281, 1284 (S.D.N.Y. 1990), and the party asserting the novation's existence has the burden of proving that the subsequent agreement was intended as a complete substitute for the parties' prior agreements. *LTV Corp. v. Aetna Cas. & Sur. Co.* (*In re Chateaugay Corp.*), 116 B.R. 887, 907 (Bankr. S.D.N.Y. 1990) (citation omitted); *see also Ventricelli v. DeGennaro*, 633 N.Y.S.2d 315, 316 (App. Div. 1995) ("The trial record reveals that the defendant failed to sustain his burden of proof of establishing that it was the intent of the parties to effect a novation substituting a new obligor or another contract for the original obligation."); *Goldbard v. Empire State Mut. Life Ins. Co.*, 171 N.Y.S.2d 194, 202 (App. Div. 1958) ("It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed." (citation omitted)); *Beck v. Mfrs. Hanover Trust Co.*, 481 N.Y.S.2d 211, 214 (Sup. Ct. 1984) ("In order to prove a novation, there must be a 'clear and definite intention on the part of all concerned that such is the purpose of the agreement. Not only must the intention to effect a novation be clearly shown, but a novation [must] never . . . be presumed." (quoting 22 N.Y. Jur. 2d, Contracts, § 406)).

Appellants contend that the April 2007 Settlement Agreement was a novation because it explicitly was intended to replace the January 2007 Agreement between the parties. The Appellants point to the presence of a merger clause in the April 2007 Agreement[6] as indicative of the parties' intent to create such a novation. The Appellants incorrectly focus on the January 2007 Agreement as the claim that Appellee was forbearing by the April 2007 Agreement. Appellee's claims against Cohen stems not from any potential liability under the January 2007 Agreement but rather liability for the underlying actions of wrongfully transferring several of Appellee's properties. Moreover, even if the language in the merger clause[7] did weigh in favor of the parties' intention to effectuate a novation,[8] there is

---

[6] The merger clause in the April 2007 Agreement stated: "All prior understandings and agreements between the parties herein whether oral or written, (including but not limited to, that certain letter agreement dated January 12, 2007 in which Metropolitan, Cohen and Wissak acknowledged their joint and several liability to Treuhold for the Metropolitan debt), are superseded by this agreement which fully and completely expresses the agreement between the parties hereto with respect to the subject matter hereof."

[7] Although a merger clause certainly provides some evidence of parties' intent to form a novation, the presence of a merger clause is not determinative of the novation inquiry. *See Abuelhija v. Chappelle*, No. 08 CV 3679(HB), 2009 WL 1883787, at *6 (S.D.N.Y. June 29, 2009) ("An intent to extinguish earlier contractual obligations cannot be inferred from a standard merger clause simply because the parties to the later agreement also entered an earlier contract on a related topic. The merger clause does not evidence a 'clear expression' of intent to extinguish a separate and distinct written contract." (citation omitted)). Due to Cohen's breach of the January 2007 Agreement, the Court need not analyze the sufficiency of this merger clause as replacing the January 2007 Agreement. The merger agreement does not establish that the April 2007 Agreement was a novation of any claims that Treuhold possessed against Cohen, Wissak, or Metropolitan.

[8] The breach of the January 2007 Agreement precludes the formation of a novation to replace the January 2007 Agreement. The Bankruptcy Court

contrary evidence that the parties intended to create an executory accord. The April 2007 Agreement is labeled a "Settlement and Forbearance Agreement," and the language of the Agreement itself contemplates an executory accord. The Agreement provides that "[i]n the event of any default . . . all sums due and owing from Cohen and/or Wissak . . . shall be deemed accelerated and immediately due and owing . . . and Treuhold's Forbearance shall terminate and expire." (Pl.'s Motion Ex. 11 ¶ 10.) The Agreement further provides that "[u]pon the due, timely and complete performance by each of Metropolitan, Cohen and Wissak of his and its respective payment obligations . . . , Treuhold shall deliver to each of them, respectively, a general release . . . ." (*Id.* ¶ 16.) Only performance under the terms

of the April 2007 Settlement Agreement would operate to discharge the debts owed by Cohen, Wissak, and Metropolitan. *See Am. Bank & Trust Co. v. Koplik*, 451 N.Y.S.2d 426, 428 (App. Div. 1982) (citing *Moers v. Moers*, 229 N.Y. 294, 300, 128 N.E. 202, 203 (N.Y. 1920)). Indeed, if the performance due by those parties was not performed according to the terms of the Agreement, Treuhold would be "entitled to either assert [its] rights under the claim, cause of action, contract or obligation which is the subject" of the Agreement. *See* N.Y. Gen. Oblig. Law § 15-501.

Accordingly, the Court agrees with the Bankruptcy Court that the undisputed evidence demonstrates that the April 2007 Agreement was an executory accord, not a novation.[9] Because the April 2007 Agreement was an executory accord, Appellee was entitled to sue either under the breach of the April 2007 Agreement or under its original claim to set aside the transfer of the Brookhaven and Coursen Properties free and clear of all liens. Appellee's decision to commence an action against Wissak and Metropolitan to recover the sums due under the April 2007 Agreement does not foreclose Appellee's ability to proceed against Cohen to assert its rights under the cause of action. The Bankruptcy Court found no evidence in the record that the April 2007 Agreement had been satisfied by Wissak

---

found that the undisputed evidence demonstrated that Cohen had breached the January 2007 Agreement by failing to make the payments due under its terms. *In re Cohen*, 2009 WL 1871054, at *13. The Bankruptcy Court correctly noted that "where the original contract has already been breached there cannot be a novation as a previously valid obligation did not exist at the time the new contract was made." *Id.* at *12; *see Wasserstrom v. Interstate Litho. Corp.*, 495 N.Y.S.2d 217, 219 (App. Div. 1985) ("[T]he settlement documents could not create a novation inasmuch as the original contract between Wasserstrom and defendant had already been breached by the latter's failure to pay upon the promissory note when the first installment became due." (citing *Bandman v. Finn*, 78 N.E. 175 (N.Y. 1906)); 22 N.Y. Jur. 2d Contracts § 467 ("The parties to any contract, if they continue interested and act upon a sufficient consideration while it remains executory, *and before a breach of it occurs*, may by a new and later agreement rescind it in whole or in part, alter or modify it in any respect, add to or supplement it, or replace it by a substitute." (emphasis added)). Instead, the April 2007 Agreement is more properly viewed as an express or implied agreement by Appellee to accept Cohen's stipulated performance in satisfaction or discharge of Appellee's claims against Cohen for the improper sale of the Brookhaven and Coursen Properties.

---

[9] In reaching this conclusion, the Court also notes that the underlying liability that Appellee, Cohen and Wissak intended to relieve was that which arose as a result of the wrongful sale of the Brookhaven and Coursen Properties—not any liability resulting from the January 2007 Agreement. This wrongful act was a tort, and in the absence of an expression of a contrary intention, there is a strong line of authority in New York State that "an agreement settling a tort claim made prior to suit or made out of court during the pendency of the action is presumed to be a mere executory accord." *Langlois v. Langlois*, 169 N.Y.S.2d 170, 174 (App. Div. 1957) (collecting cases).

either through the mortgage or the state court judgment. Indeed, there is no evidence currently in the record that Appellee has recovered anything from Wissak on the judgment. It is well settled that "[t]he commencement of proceedings against one or some of a number of joint tortfeasors does not preclude the maintenance of an action against the other or others." N.Y. Jur. Torts § 30 (citing *Russell v. McCall*, 36 N.E. 498 (N.Y. 1894)); *id.* § 30 ("[A]lthough an unsatisfied judgment against one tortfeasor is not a bar to an action against the other for the same damage, there may be only one satisfaction of the claim."); *see also Parchefsky v. Kroll Bros.*, 196 N.E. 308, 310 (N.Y. 1935) ("A pending action, brought against the physicians, is not an election of remedy which bars a subsequent recovery against the original wrongdoer for damages resultant from the original wrong."). Although Appellee cannot receive double recovery, Appellee's claims remain valid against both Cohen and Wissak until *payment*, not until mere judgment. *See McCreedy v. Lopera*, 498 N.Y.S.2d 666, 667 (Dist. Ct. 1985) ("Where the debt is agreed upon, *payment* of said amount terminates the debtor/creditor relationship." (emphasis added)); *see also* 16 N.Y. Prac., N.Y. Law of Torts § 19:42 ("Upon *tender of money* by a debtor, the creditor has a right to accept or reject it. Upon *acceptance*, the accord and satisfaction is complete." (collecting cases)). Appellee is not proceeding against Cohen under the terms of the April 2007 Settlement Agreement. Instead, Appellee is exercising his option that, should a default occur under the terms of the April 2007 Settlement Agreement, Treuhold's forbearance shall terminate and "Treuhold shall be free to commence any and all litigation it shall deem appropriate against each and any defaulting party." (Pl.'s Motion Ex. 11 ¶ 10.) This includes the right to assert underlying claims against Cohen based on his improper transfer of the Brookhaven and Coursen Properties. Cohen defaulted in his payments due under the Agreement;

accordingly, Appellee is entitled to proceed against Cohen and set aside the transfer of the Brookhaven and Coursen Properties free and clear of the liens.

Although the transfer of the Properties must be set aside, that determination on summary judgment does not eliminate the issue of whether or not a joint venture existed between Treuhold and Metropolitan. In other words, if a joint venture existed and those Properties were part of the joint venture, then Metropolitan would have a beneficial interest in those Properties such that Treuhold would not be entitled to fee title to the Properties free and clear of all liens. Thus, the Court will now examine the Bankruptcy Court's determination on the joint venture issue.

### C. The Existence of a Joint Venture

Appellants assert that there existed a joint venture between Treuhold and Metropolitan, and that, as a result thereof, Metropolitan had a beneficial interest in the Brookhaven and Coursen Properties.[10] Accordingly, Appellants

---

[10] As an initial matter, the parties dispute whether the alleged joint venture and the challenged transactions violate the Statute of Frauds. The Statute of Frauds requires that contracts and agreements and transactions pertaining to particular matters or items must be in writing. A joint venture agreement does not fall within the Statute of Frauds. Joint ventures need not be evidenced by a written agreement; they may be created by an oral agreement between the parties. *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893 (JFB)(AKT), 2009 WL 875553, at *5 (E.D.N.Y. Mar. 30, 2009) ("Parties can evince their intent to be bound in a joint venture through a written or oral agreement."). The Statute of Frauds is generally not applicable to an oral joint venture agreement, even an oral joint venture agreement to purchase and sell real property to third parties, when that joint venture is capable of being performed within one year. *Foster v. Kovner*, 840 N.Y.S.2d 328, 331 (App. Div. 2007). Therefore, because the purported joint venture agreement

assert that the Bankruptcy Court erroneously awarded Treuhold fee title to the Properties free and clear of all liens because Treuhold was not the sole owner of the Properties prior to their transfer by Cohen. Appellee denies the existence of a joint venture between the parties. The Bankruptcy Court determined, on summary judgment, that no joint venture

between Treuhold and Metropolitan was capable of being performed in one year, it is not subject to the Statute of Frauds.

However, contracts for the sale of land do require a writing. The law in New York is clear, and the parties do not dispute, that a contract for the sale of land falls directly under the Statute of Frauds. *See* N.Y. Gen. Obl. Law § 5-703. The law provides that "[a] contract . . . for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, *is in writing* . . . ." *Id.* § 5-703(2) (emphasis added). Appellee argues that Cohen's transfers of Treuhold's Properties violated New York's Statute of Frauds. Appellants' reply does not contest this point, but rather argues that the joint venture *itself* is not within the Statute of Frauds. An agreement to form a joint venture that will deal in land to be acquired in the future is distinct from the actual conveyance of land between joint venturers. *See Dobbs v. Vornado, Inc.*, 576 F. Supp. 1072, 1077 (E.D.N.Y. 1983) (collecting cases). Appellee correctly notes that a contract for the sale of land, even in the context of a joint venture, is subject to the Statute of Frauds. *See Najjar v. Nat'l Kinney Corp.*, 465 N.Y.S.2d 590, 590-91 (App. Div. 1983). Thus, even though the sale of a particular piece of land without a writing may be invalid because it violates New York law, such a determination does not necessitate that the joint venture itself regarding future sales of land must be in writing. Accordingly, the Statute of Frauds does not preclude, as a matter of law, the existence of the alleged oral joint venture in this case. Thus, the Bankruptcy Court correctly noted that, "[i]n the case before the Court, the absence of a written agreement will not prevent a finding of a joint venture if all the elements are satisfied." *In re Cohen*, 2009 WL 1871054, at *7.

existed. However, after a review of the record, this Court concludes that genuine issues of material fact exist relating to the requisite elements of a joint venture such that this issue cannot be decided on summary judgment.

A joint venture is "'an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.'" *Kaufman v. Torkan*, 859 N.Y.S.2d 253, 255 (App. Div. 2008) (quoting *Williams v. Forbes*, 571 N.Y.S.2d 818, 819 (App. Div. 1991)). A party seeking to establish the existence of a joint venture under New York law must demonstrate the following elements: (1) the existence of a specific agreement between two or more persons to carry on an enterprise for profit; (2) evidence in the agreement of the parties' intent to be joint venturers; (3) a contribution of property, financing, skill, knowledge, or effort by each party to the joint venture; (4) some degree of joint control over the venture by each party; and (5) the existence of a provision for the sharing of both profits and losses. *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003). The existence of a joint venture is generally a question of fact. *See Olson v. Smithtown Med. Specialists*, 602 N.Y.S.2d 649, 650 (App. Div. 1993). The party asserting the existence of the joint venture bears the burden of proof to establish these elements. *De Vito v. Pokoik*, 540 N.Y.S.2d 858, 859 (App. Div. 1989). Failure to establish any element of the joint venture will be fatal to the party asserting the existence of the joint venture. *Kids Cloz, Inc.*, 320 F. Supp. 2d at 171.

The fifth element of a joint venture requires a provision for sharing of both profits and losses. This element is essential to the creation of a joint venture. *Williams*, 571 N.Y.S.2d at 819; *see Kidz Cloz, Inc.*, 320 F. Supp. 2d at 175; *see also Dinaco*, 346 F.3d at 68 (quoting *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958)) ("An indispensable essential of a

contract of partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses."). However, "if a party only stands to lose the individual services it invested in that business endeavor, it is not incurring a shared loss as required by a joint venture agreement. *Milton Abeles*, 2009 WL 875553, at *6 (citing *Dinaco, Inc.*, 346 F.3d at 68; *Kidz Cloz, Inc.*, 320 F. Supp. 2d at 175).

The Bankruptcy Court found that the fifth element of a joint venture, an agreement to share losses, was lacking in the business arrangement between the parties in this case, such that summary judgment for Treuhold on this issue was warranted. *In re Cohen*, 2009 WL 1871054, at *7. Specifically, the Bankruptcy Court concluded: "There is no evidence that [Treuhold] agreed to compensate Metropolitan for unanticipated post-closing expenses incurred for matters such as additional repairs or that Metropolitan could deduct such expenses from the Plaintiff's share of sale proceeds with respect to the sale of that property or another property. As a finding of an agreement to share losses is indispensable to a joint venture, the Court finds that a joint venture did not exist between [Treuhold] and Metropolitan." *Id.*

This Court however, finds the determination that there was no evidence in the record to support the existence of sharing of losses is erroneous. Appellants correctly point to assertions in Cohen's deposition and affidavit that there was an oral agreement to share losses. Specifically, Appellants point to Cohen's testimony during his deposition that the way profits or expenses were apportioned in connection with the properties was the following: "50/50 on the profits. Reimburse Alvin for the actual interest that he paid. And, you know, it would be both responsible for profits, losses across the board." (Pl.'s Motion Ex. 7 at 201.) Cohen further stated the following in his affidavit: "When the respective properties were sold, Treuhold was to receive its investment back, together with any interest it had paid on the loan. City Development was to receive all of its investment for the management and rehabilitation of the properties. The profits remaining or any losses sustained, if any, were to be divided equally between the two parties. . . . When Metropolitan was formed in 2004, the same arrangement continued between Treuhold and Metropolitan as had been a [sp] followed with City Development." (Feb. 13 Cohen Aff. ¶¶ 7-8.) Appellants also point to Schedule A, which indicates that one property had been sold at a loss, (*see* April 2007 Settlement Agreement at Sched. A.), to support their argument.

A non-moving party's own testimony, if based upon personal knowledge, as to the existence of an agreement to share losses is sufficient to create a triable issue of fact that defeats summary judgment on that element. *See, e.g.*, *Colle v. Goldman*, No. 05 CV 3981(JG), 2007 WL 1395561, at *8 (E.D.N.Y. May 14, 2007) (finding that summary judgment should not be granted when the non-moving party "stated at least twice in his deposition that he agreed to split 'losses' evenly with [the moving party]. [The non-moving party] also answered in a sworn response to an interrogatory that he 'would have been responsible for 50 percent of all expenses incurred by [the moving party] in connection with the joint venture, [including] liabilities, upon the joint venture's sale of the Properties'") (citations omitted)); *see also Halloran v. Ohlmeyer Commc'ns Co.*, 618 F. Supp. 1214, 1219 (S.D.N.Y. 1985) (finding that a genuine issue of triable fact was raised when the non-moving party testified "I guess you could say that *if there were going to be losses*, that is I was a partner, according to a partnership, *I would have to share in the losses* . . . ."). Accordingly, the evidence to which

Appellants point in the record is sufficient to raise a material issue of fact to withstand summary judgment against them on that issue.

In its opposition papers (and at oral argument), Appellee attempts to discount Cohen's testimony by arguing that it is "self-serving" and inconsistent with his "contemporaneous conduct." (Opp. Brief at 21.) However, neither the self-serving nature of the admissible testimony, nor the existence of evidence in the record which may undermine it, is sufficient to eliminate such testimony for purposes of summary judgment. Instead, such disputed issues involving credibility cannot be resolved by summary judgment. The Second Circuit recently reiterated this point in *In re Dana Corp.*, 574 F.3d 129, 152-54 (2d Cir. 2009), in which the Court concluded that the Bankruptcy Court had erred in granting summary judgment because genuine issues of material fact existed under New York law as to whether a conspiracy to misappropriate a supplier's trade secrets existed and whether the debtor was aware of such conspiracy and encouraged or ratified the misappropriation. In particular, the Court emphasized that "'[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.'" *Id.* at 152 (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)). After reviewing the summary judgment standard, the Court concluded that the summary judgment principles "were not properly applied" by the Bankruptcy Court. *Id.* at 152. Moreover, on the issue of self-serving statements, the Court noted:

> Of course, the fact that [the witnesses'] denials were self-serving does not mean that such testimony would not be admissible at trial; the self-serving nature of a witness's statements goes to the statements' weight, not to their admissibility. *See, e.g., St. Pierre v. Dyer*, 208 F.3d 394, 405 (2d Cir. 2000); *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984). But the weighing of such statements is a matter for the finder of fact at trial, "not the prerogative of the court on a motion for summary judgment." *St. Pierre*, 208 F.3d at 405.

*Id.* at 152; *see also S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007) ("[I]t is unremarkable that the defendants could not otherwise corroborate their personal conversations. That is likely to be the case regarding most conversations between two people, and does not disqualify either participant from testifying about the interchange – subject, of course, to a credibility determination by the finder of fact. The district court was thus wrong to disregard the declaration as 'uncorroborated and self-serving.'"); *Kirk v. City of Tulsa, Oklahoma*, 72 F. App'x 747, 751 (10th Cir. 2003) ("The testimony and averments of a party, however, are legally competent to oppose summary judgment, notwithstanding their inherently self-serving nature, provided they are based on personal knowledge and set forth facts that would be admissible in evidence." (quotations and citations omitted)); *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) ("That an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact.").

In short, Cohen has raised material issues of fact regarding the existence of a joint venture, including the sharing of profits and losses, that cannot be resolved on summary judgment. Therefore, the Court reverses the Bankruptcy Court's conclusion on this issue and remands for further proceedings to

determine whether a joint venture existed between Treuhold and Metropolitan.

### D. The Extent of Treuhold's Recovery

Appellants also contend that Treuhold is afforded a "windfall" by returning the Brookhaven and Coursen Properties to it free and clear of all liens. First, Appellants contend that a joint venture existed between the parties, which was sufficient to establish that Metropolitan was also beneficial owner of the Brookhaven and Coursen Properties with Appellee. Even if the Bankruptcy Court ultimately concludes that no joint venture existed between the parties, Appellants argue that, under the April 2007 Agreement, Treuhold received substantial payments that Appellants ought to be credited for when calculating Treuhold's deserved recovery. Appellants also contend that, at most, only $302,283.02 is due and owing to Treuhold by Cohen under the terms of the April 2007 Settlement Agreement because Cohen has paid significant portions of the funds he was scheduled to pay.

Because there are currently disputed issues of material fact regarding the existence and precise terms of a joint venture between Metropolitan and Treuhold, the issue of whether Appellee is afforded an "inequitable windfall" by recovery of the Brookhaven and Coursen Properties free and clear of all liens cannot be determined at this juncture but must be considered by the Bankruptcy Court on remand. Moreover, as counsel for Appellees pointed out at oral argument, the record is unclear as to the current values of the particular properties at issue in the April 2007 Agreement. Accordingly, on remand, after conducting further proceedings to resolve the issue of whether there was a joint venture between the parties, the Bankruptcy Court should consider, with respect to any recovery by Treuhold, whether there should be an offset based upon money already recovered by

Treuhold from Cohen under the April 2007 Agreement or otherwise.[11]

### E. Other Affirmative Defenses

Appellants also assert the affirmative defenses of (1) waiver; (2) unclean hands; (3) equitable estoppel; and (4) laches. The Bankruptcy Court concluded that there was no evidence in the record to support these defenses, and, thus, summary judgment on these defenses in Treuhold's favor was warranted. This Court agrees. As set forth below, even construing the record most favorably to Appellants, there is no evidence which would support the application of any of these defenses to the facts of this case.

#### 1. Waiver

Appellants first argue that, under the doctrine of waiver, Appellee relinquished its right to challenge the conveyance of the Brookhaven and Coursen Properties. According to Appellants, Appellee's execution of the Settlement Agreement amounted to a waiver of the right to challenge the transactions that were the subject of the Agreement.

---

[11] Although the Bankruptcy Court correctly noted that Treuhold is permitted to proceed against both Cohen and Wissak, it does not follow that Cohen can disregard money already paid to Treuhold under the April 2007 Settlement Agreement (prior to the breach) that was related to the same debt that is now the subject of the instant proceedings. Thus, the Bankruptcy Court must separately consider this issue on remand, as well as any other proceeds received by Treuhold in connection with the Brookhaven and Coursen Properties that should offset any recovery. *See, e.g.*, *Solomon v. Metropolitan Life Ins. Co.*, 628 F. Supp.2d 519, 534 (S.D.N.Y. 2009) (summary judgment unwarranted on counterclaim where "the parties disagree as to the amount of the claimed overpayment, the basis for [the defendant's] calculations, and the offsets to which [plaintiff] may be entitled").

However, waiver requires "an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 29-30 (E.D.N.Y. 2009) (quoting *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179, 187 (App. Div. 1980)). To demonstrate waiver, a party must show an "intent not to claim the purported advantage." *Hadden v. Consol. Edison Co. of N.Y., Inc.*, 382 N.E.2d 1136, 1138 (N.Y. 1978). Here, as the Bankruptcy Court noted, there was no evidence that Appellee intended to "forego the power or privilege to" pursue its claim for return of the wrongly transferred Properties. By forbearing from pursuing its claims unless and until Cohen, Wissak, and Metropolitan paid Appellee for the nine unauthorized transfers under the April 2007 Agreement, Appellee showed no intent to relinquish its right to proceed against those parties for the wrongful transfer of such properties. *See In re Cohen*, 2009 WL 1871054, at *15 ("There was no relinquishment of the [Appellee's] right to bring an action to set aside the forged deeds as [Cohen] and Wissak never fully performed under the April 2007 Agreement and [Appellee] expressly reserved its right to pursue any of its rights and remedies, which includes the right to proceed under the original claim . . . ."). Thus, the unambiguous language of the April 2007 Agreement indicates that there was no waiver, nor is there any other evidence in the record from which a waiver can be rationally found. Accordingly, because there is no evidence to support a finding that the Appellee has waived its rights to pursue a claim against Cohen to return ownership of the Properties to Appellee, this affirmative defense does not survive summary judgment.

## 2. Unclean Hands

Appellants next contend that Appellee's right to recovery is barred by the doctrine of unclean hands. The defense of unclean hands requires the party asserting the affirmative defense to prove that (1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result. *Kopsidas v. Krokos*, 742 N.Y.S.2d 342, 344 (App. Div. 2002); *see also In re Cohen*, 2009 WL 1871054, at *16. The party asserting the doctrine has the initial burden of demonstrating these elements. *Fade v. Pugliani/ Fade*, 779 N.Y.S.2d 568, 570 (App. Div. 2004). The doctrine of unclean hands is "never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only 'when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.'" *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 214 N.E.2d 361, 362 (N.Y. 1966) (internal citations omitted); *see also Markel v. Scovill Mfg. Co.*, 471 F. Supp. 1244, 1255 (W.D.N.Y. 1979) ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations."). Here, there is no allegation (or evidence) that Appellee has committed any wrong; Appellee is proceeding against Cohen for the return of Properties that Cohen transferred without Appellee's authorization. Furthermore, as discussed *supra*, contrary to Cohen's contentions regarding the parties' past practices, Cohen did not have authorization to transfer the Properties, and their transfer constituted self-dealing. As the Bankruptcy Court noted, any prejudice to the Appellant mortgagees is the result of the inequitable conduct of Cohen, who forged deeds and other conveyance documents in order to transfer Appellee's property without authorization. Given the absence of any evidence of wrongful conduct by the Appellee, the defense of unclean hands is unavailable to the Appellants under these circumstances as a matter of law. Accordingly, the Bankruptcy Court properly granted summary judgment in Appellee's favor on this issue.

### 3. Equitable Estoppel

Appellants also claim that equitable estoppel prevents the return of the Brookhaven and Coursen Properties to Appellee free and clear of any liens. To successfully plead equitable estoppel, the party asserting such affirmative defense must demonstrate: (1) the asserting party lacked knowledge of the true facts; (2) the asserting party relied upon the conduct of the party to be estopped; and (3) the asserting party prejudicially changed its position in reliance thereon. *First Union Nat'l Bank v. Tecklenburg*, 769 N.Y.S.2d 573, 575 (App. Div. 2003). As a threshold matter, Cohen could not possibly rely upon this doctrine because he certainly had knowledge of the true facts regarding his relationship with Treuhold. Moreover, with respect to the Appellant mortgagees, it is undisputed that it was not the conduct of Appellee upon which the Appellant mortgagees relied but rather the conduct of Cohen, who represented that he was authorized to effectuate the Brookhaven and Coursen transactions. Appellee correctly indicates that estoppel "rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury." *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 436 N.E.2d 1265, 1269 (N.Y. 1982). It is undisputed that Appellant mortgagees did not have any interaction with Appellee that would lead them to rely upon Appellee's conduct and thereby change their position. Moreover, as discussed *supra*, Appellant mortgagees were under a duty to inquire into the circumstances surrounding the Brookhaven and Coursen transactions due to the self-dealing nature of Cohen's actions. *See Collision Plan Unlimited*, 472 N.E.2d at 29. Appellant mortgagees cannot now blame Cohen's fraudulent actions and their failure to inquire on Appellee. Accordingly, because there is no evidence to support the application of the doctrine of equitable estoppel, the Bankruptcy Court properly rejected Appellants' equitable estoppel claim on summary judgment as a matter of law.

### 4. Laches

Finally, Appellant mortgagees claim that Appellee's claims are barred by the doctrine of laches. The defense of laches requires a showing of "undue delay" by a party asserting its rights and prejudice to the opposing party as a result of such delay. *Moreschi v. DiPasquale*, 872 N.Y.S.2d 108, 109 (App. Div. 2009). The burden is on the party claiming the defense of laches to demonstrate the following elements: "(1) conduct by an offending party giving rise to the situation complained of; (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so; (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief; and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant." *Bailey v. Chernoff*, 846 N.Y.S.2d 462, 465 (App. Div. 2007) (quoting *Kuhn v. Town of Johnstown*, 669 N.Y.S.2d 757, 759 (App. Div. 1998)). However, as the Bankruptcy Court noted, "[m]ere inaction or delay in bringing a proceeding, without a showing of prejudice, does not constitute laches." *Haberman v. Haberman*, 629 N.Y.S.2d 65, 67 (App. Div. 1995). Appellant mortgagees cannot blame Appellee for the wrongful actions of Cohen. It was Cohen's forgery and wrongful transfer of Appellee's property that has "injured" the Appellant mortgagees—not any action by Appellee. Appellee did not "delay" in asserting its claim for return of the Properties; upon learning that Cohen effectuated the unauthorized transfers, Appellee entered into the January 2007 Agreement with Cohen, Wissak, and Metropolitan. Upon their breach of the January 2007 Agreement, Appellee again tried to settle the matter by entering into the April 2007 Settlement Agreement. Indeed it was Cohen's, Wissak's, and Metropolitan's default under the April 2007 Agreement that

resulted in Appellee's assertion of its claim for return of the Properties that were transferred without authorization. For the purpose of a claim of laches, it is the "reasonableness of the delay rather than the number of years that elapse which is the focus of the inquiry." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 829 F. Supp. 608, 615 (S.D.N.Y. 1993) (citation omitted). This undisputed evidence precludes any rational finding that the delay was unreasonable in this case. Moreover, as the Bankruptcy Court correctly noted, none of the Appellants have claimed, or shown any evidence, of prejudice that resulted from any delay in the commencement of the adversary proceeding. In other words, the mortgagees' liens were void *ab initio* and, thus, no further harm has resulted from any delay. *See In re Cohen*, 2009 WL 1871054, at *15 ("Even if [Treuhold] had commenced legal action against [Cohen] and the mortgagees at that time, the result would have been the same – the mortgagees' liens are void *ab initio* because the deeds transferring the Properties to [Cohen] were forged. [Appellants] did not suffer any injury or prejudice as a result of the [Appellee] commencing this adversary proceeding one and a half years after the transfers of the Properties occurred."). Accordingly, given the absence of any evidence of prejudice to Appellants from any delay, the Bankruptcy Court correctly determined that the defense of laches could not survive summary judgment in this case as a matter of law.

### III. CONCLUSION

For the foregoing reasons, this Court concludes the Bankruptcy Court erred in granting summary judgment on the existence of a joint venture because disputed issues of material fact exist on that question. The Bankruptcy Court must also consider on remand, after resolution of the joint venture issue, whether any offset is warranted, based upon payments made under the April 2007 Agreement or otherwise, for any outstanding money that it is determined are owed to Treuhold. The Court affirms the Bankruptcy Court's grant of summary judgment on all other grounds, including with respect to Cohen's lack of authority to execute the sales of the Brookhaven and Coursen Properties, the existence of a novation, and Appellants' affirmative defenses. Accordingly, the Court remands the case to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: January 6, 2010
Central Islip, NY

\* \* \*

The attorney for Appellant Mitchell J. Cohen are Gabriel Del Virginia, Law Office of Gabriel del Virginia, 488 Madison Avenue, 19th Floor, New York, NY 10022 and Leland S. Beck, Beck & Strauss P.L.L.C., 50 Charles Lindbergh Blvd., Suite 205, Uniondale, NY 11553. Appellants Saxon Mortgage Services, Inc., Wells Fargo Bank, N.A., America's Servicing Company, and Mortgage Electronic Registration Systems, Inc., as nominee for Lend America, Inc., are represented by Frank J. Haupel, Del Bello Donnellan Weingarten Wise & Wiederkehr, LLP, One North Lexington Avenue, 11th Floor, White Plains, NY 10601 The attorneys for Appellee are Alan E. Marder of Scarcella Rosen & Slome, LLP, 333 Earle Ovington Blvd, Ninth Floor, Uniondale, NY 11553 and Leonard Alan

Benowich, Benowich Law LLP, 1025 Westchester Avenue, White Plains, NY 10604.